# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### JUNE 1997 SESSION



FILED

September 15, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | |
|---|---|
| **STATE OF TENNESSEE,** | ) |
| | ) C.C.A. No.  02C01-9609-CR-00310 |
| Appellee, | ) |
| | ) Shelby County |
| V. | ) |
| | ) Honorable Carolyn Wade Blackett, Judge |
| | ) |
| **CECIL C. GROSE,** | ) (First Degree Murder) |
| | ) |
| Appellant. | ) |

FOR THE APPELLANT:

William D. Massey
Attorney at Law
3634 Austin Peay Highway
Memphis, TN 38125

FOR THE APPELLEE:

Charles W. Burson
Attorney General & Reporter

Kathy Morante
Deputy Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

William L. Gibbons
District Attorney General

James J. Challen
Assistant District Attorney General
Criminal Justice Complex
201 Poplar Avenue, Suite 301
Memphis, TN 38103

OPINION FILED: _____

**AFFIRMED**

**PAUL G. SUMMERS,**
Judge

**O P I N I O N**

The appellant, Cecil C. Grose, was convicted by a jury of first degree murder. He was sentenced to life in prison. He appeals his conviction raising the following issues for our review:

> 1. Whether the state proved beyond a reasonable doubt that the death of the victim was the natural and probable result of the appellant's actions;
>
> 2. Whether the evidence was sufficient to sustain his conviction; and
>
> 3. Whether the trial court erred in failing to charge the jury on the defense of diminished capacity.

Upon review, we affirm the appellant's conviction.

**FACTS**

The appellant and the victim in this case, Jamie Forbes, were romantically acquainted. However, prior to the homicide their relationship had deteriorated. Forbes instituted stalking and harassment charges against the appellant. The day before the scheduled hearing on these charges, the appellant stated to a friend, William Carter, that he was going to kill Forbes. He showed Carter the rifle he planned to use. The appellant explained that he was going to have to do "a year anyway" on the stalking charges, so he figured that he would kill Forbes and "they would just think he was crazy and he could get off on insanity." The appellant took the rifle and left. Carter, convinced the appellant was seriously planning to kill Forbes, drove to a phone and called the Millington police. Unfortunately, the appellant found Forbes driving down the road before the police could prevent the homicide. The appellant pulled up behind her car and shot her with a high-powered rifle. The appellant sped away in his vehicle. Forbes suffered tremendous trauma and was in the hospital for several weeks. At the time of her release, she was a quadriplegic.

Approximately two weeks after Forbes' release from the hospital, her fever became extremely high, and she was readmitted to the hospital. She quickly fell into a coma. After suffering this condition for almost eight days, her family decided that she should not be resuscitated in the event of cardiac or pulmonary arrest. She died soon thereafter.

The pathologist testified that the cause of death was gunshot wounds. The pathologist further testified that there were two entry wounds, two exit wounds and two re-entry wounds.

I

In his first issue the appellant contends that the trial court erred in overruling his motion for judgment of acquittal. He claims the state failed to prove he caused Forbes' death.[1] Specifically, he argues that the victim's immediate cause of death was the decision of her family to instruct medical personnel not to resuscitate the victim in the event of cardiac or pulmonary arrest. In support of this contention, the appellant relies primarily on State v. Ruane, 912 S.W.2d 766 (Tenn. Crim. App. 1995). In Ruane, this Court held that the decision of a competent victim to refuse medical care is not a supervening cause that removes a criminal defendant's responsibility. Id. at 776. The rationale behind this decision was the fact that a victim's conscious decision to remove artificial life-support, while an act of intervention, only carries out the natural result of the defendant's wrongful act. Id. The appellant argues that because Forbes did not participate in the decision to refuse further medical treatment, her family's action was a wholly unexpected and unforeseeable supervening event which was the cause of her death.

---

[1] The appellant also contends that the trial court erroneously instructed the jury on the issue of causation. In the judge's charge to the jury she stated that the appellant could be convicted if the jury found that he had "unlawfully contributed to the death of the deceased." In State v. Ruane, 912 S.W.2d 766 (Tenn. Crim. App. 1995) this Court cautioned lower courts about using such language in a jury charge. We stated that such language might tend to mislead and confuse the jury. Since Ruane, we have again addressed this issue in State v. Bondurant, No. 01C01-9501-CC-00023 (Tenn. Crim. App. at Nashville, May 24, 1996). In Bondurant, we acknowledged our disapproval of such an instruction, but found that while such an instruction based upon T.P.I. Crim. 37.11 is not favored today, it does not rise to the level of constitutional deprivation.

In order for this Court to sustain a criminal conviction for homicide, the evidence must establish that the appellant's actions caused the harm. This is generally established by showing that the victim's death was the natural and probable result of the defendant's unlawful act.[2] State v. Barnes, 703 S.W.2d 611 (Tenn. 1985). Our Supreme Court has established a general rule on the issue of causation:

> One who unlawfully inflicts a dangerous wound upon another is held for the consequences flowing from such injury, whether the sequence be direct or through the operation of intermediate agencies dependent upon and arising out of the original cause.

Odeneal v. State, 157 S.W. 419, 421 (Tenn. 1913).


Basically, the appellant asks this Court for largess because his actions only put Forbes in a vegetative coma from which she could not exercise her right to participate in her own medical decisions. We find that such a holding would be illogical. Offenders failing to kill their victims immediately, merely leaving them in a vegetative state, could escape punishment for homicide if the family chooses to end the victim's suffering. In the instant case, we find that Forbes' family acted as her agent in making the decision not to resuscitate her in the event of cardiac or pulmonary arrest. In so finding, we are merely extending Ruane. We hold that when a person, acting in the best interest of the victim, issues a nonresuscitation order, and such order is accepted by the attending medical personnel, that person is acting only as an agent for the victim and is not a supervening cause that releases the offender from criminal responsibility. The attending physicians and the family of the victim owe no duty to the accused to treat the victim so as to mitigate his or her potential criminal liability.

---

[2] As common sense would suggest, the perimeters of legal causation are more closely drawn when the intervening cause is a matter of coincidence. For example, coincidence is where A shoots at B, B changes his route in an attempt to escape harm and is struck by a car driven by C. This would be a coincidence and not subject A to liability for homicide. There is less reason to hold the defendant liable for the bad result when he has merely caused the victim to be at a particular place at a particular time, than when he has brought other agencies into play in response to a danger or injury he directly inflicted. Therefore, in order to warrant a conviction for homicide, the death must be the natural and probable consequence of the unlawful act. If an independent intervening agency also contributes to the victim's death, the defendant will still be held liable so long as the intervening agency was a foreseeable response to his or her initial injury.

The appellant shot his victim with a high-powered rifle. The state offered proof at trial that the victim would have died within hours after the initial gunshot wounds had she not been administered emergency medical treatment. The decision to end Forbes' suffering and allow her to die with dignity was the natural and probable result of the appellant's gunshot wounds. He began a chain of events which in their natural and probable sequence caused the victim's death. The decision to abstain from providing extraordinary or heroic medical intervention merely allowed the natural and probable result of the appellant's actions to come to fruition. The jury resolved the factual question of causation in favor of the state. The record supports the jury's finding on the issue of causation beyond a reasonable doubt. This issue is overruled.

## II

The appellant next contends that the evidence adduced at trial was insufficient as a matter of law to sustain his first degree murder conviction. Specifically, he claims that the state failed to prove he possessed the requisite mental state for first degree murder. In support of this claim, the appellant argues that he presented proof that he had consumed alcohol and several Valium tablets prior to the shooting. He claims that these actions impaired his judgment and his ability to reason. We disagree.

Great weight is afforded a verdict reached by a jury in a criminal trial. A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Moreover, a guilty verdict removes the presumption of innocence which the appellant enjoyed at trial and raises a presumption of guilt on appeal. State v. Grace, 493 S.W.2d

474, 476 (Tenn. 1973). The appellant has the burden of overcoming this presumption of guilt. Id.

Where sufficiency of the evidence is challenged, the relevant question for this Court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978).

The evidence was sufficient to sustain the appellant's conviction. The state presented evidence that prior to the shooting the appellant told a friend that he intended to kill Forbes and then flee to Mexico. He showed his friend the weapon he planned to use. The appellant did present evidence that he had been drinking and using Valium and that his reasoning and judgment were impaired. The jury, however, chose to discredit this testimony and to credit the state's witnesses. A rational trier of fact could have found, and indeed did find, that the appellant had committed first degree murder. This issue is overruled.

III

In his final issue the appellant contends that the trial judge erred in not instructing the jury on the defense of diminished capacity. At trial, the appellant presented evidence that his cognitive abilities were impaired due to temporal lobe syndrome. Also, he presented evidence that he had ingested alcohol and Valium prior to the shooting. Therefore, he argues that the trial court erred in

refusing to instruct the jury that these conditions could have diminished his capacity to form the necessary mental intent to commit first degree murder.

In support of his assertion the appellant relies primarily upon State v. Phipps, 883 S.W.2d 138 (Tenn. Crim. App. 1994). We find the appellant's interpretation of Phipps misguided. In Phipps, the defendant contended he was suffering from post-traumatic stress disorder and major depression. Based upon his condition, he attempted to defend against a first degree murder charge. He requested that the jury be instructed that it could consider his mental condition in determining whether or not he possessed the necessary mental intent to commit first degree murder. The trial judge refused to give his requested instruction. However, he did instruct the jury that post-traumatic stress disorder and major depression were not defenses to a criminal charge. This Court reversed the defendant's conviction holding that this jury instruction created the impression that the jury could not consider the mental conditions of the defendant in determining whether or not he possessed the requisite mental intent for first degree murder.

It is well settled that diminished capacity is not a defense capable of excusing or defeating a criminal charge in Tennessee. Both the state and the appellant concede this point. Diminished capacity can, however, be introduced to lessen an offense when it serves to negate mens rea. Phipps, 883 S.W.2d at 148. Evidence of an accused's mental state, at the time of the commission of the crime, is admissible to negate elements of specific intent, including premeditation and deliberation in a first degree murder case. Id. at 149.

The appellant argues that the trial judge was under a duty to instruct the jury that the appellant's diminished capacity could be considered in determining

whether he was capable of forming the necessary mental intent for first degree murder.  We disagree.  The appellant was entitled to introduce evidence of his diminished mental abilities.  He did this through both expert and nonexpert witnesses.  The jury was instructed on the proper <u>mens rea</u> necessary to find the appellant guilty of first degree murder.  In making this determination the jury could and should have considered the appellant's evidence concerning his inability to form the necessary <u>mens rea</u>.  The jury apparently discredited this evidence and found that the appellant possessed the requisite <u>mens rea</u> for first degree murder.  This issue is overruled.

AFFIRMED.

_____

PAUL G. SUMMERS, Judge

CONCUR:

_____
DAVID H. WELLES, Judge

_____
JOE G. RILEY, Judge