# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 7, 2001

## STATE OF TENNESSEE v. LARRY DEAN DICKERSON

### Direct Appeal from the Criminal Court for Crockett County
### No. 3066    Mark L. Agee, Judge

---

### No. W2000-02201-CCA-R3-CD - Filed September 10, 2001

---

The defendant appeals his premeditated first degree murder conviction for which he received a life sentence, arguing: (1) the evidence was not sufficient to convict him of first degree murder; (2) he should have been granted a mistrial due to the prosecutor's improper statements during closing arguments; and (3) he was entitled to a special jury instruction regarding diminished capacity. After reviewing the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which DAVID G. HAYES and ALAN E. GLENN, JJ., joined.

Garry Brown, Milan, Tennessee (at trial), and Clifford K. McGown, Jr., Waverly, Tennessee (on appeal), for the appellant, Larry Dean Dickerson.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; Clayburn L. Peeples, District Attorney General; Edward L. (Larry) Hardister and Harold E. (Hal) Dorsey, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The defendant and the victim were married for 27 years and worked in the same factory. In August 1997, the victim moved out of their home and eventually filed for divorce. Witnesses familiar with the defendant testified the defendant's behavior changed dramatically after the separation. The defendant stalked the victim from the time of their separation until the victim's death. He interfered with her work by frequenting her work area. When he was barred from her work area, the defendant began hiding in the ventilation system of the plant where he could watch her through a vent. Outside of work, the defendant repeatedly followed the victim. He borrowed a friend's truck in order to spy

on her. On one occasion, he hid in her vehicle while carrying a pellet pistol in order to frighten her. The defendant wrote numerous letters and notes to the victim during their separation.

In October 1997, the defendant purchased the rifle he used to kill the victim, which was the first firearm he had ever purchased. Just a few hours prior to the killing, the defendant telephoned his son-in-law and asked where he could purchase ammunition for the rifle.

Larry Dean Dickerson, the defendant, shot and killed his estranged wife during the early morning hours of December 20, 1997. Ellen Nunnery, a friend of the victim, testified she had given the victim a ride home. After the victim exited the vehicle, she stooped to speak to Nunnery through the window of the vehicle. Nunnery heard a shot, and the window shattered. A second shot rang out, and the victim collapsed beside the car. The medical examiner testified the victim had been shot twice, once on the left forearm and again in the chest, with the cause of death being the wound to the chest.

The defendant admitted to law enforcement that he shot the victim. He said he parked his car, took his rifle, and walked approximately 200 yards to a hiding place in the bushes across the street from the victim's home. For an hour, he waited in the bushes for the victim to return home. He admitted firing two shots. After shooting the victim, the defendant disposed of the weapon and traveled to several different locations, including Jackson, Memphis, Missouri, and Illinois before returning to his home, where he was arrested several days after the killing.

The prosecution and the defense each presented expert testimony regarding the defendant's capacity to commit a premeditated murder. Dr. Nat Winston, a psychiatrist, testified on behalf of the state that, in his opinion, the defendant had the ability to premeditate the killing. The defendant's expert witness, psychologist Dr. John McCoy, stated the defendant suffered from obsessive compulsive disorder at the time of the offense. He opined the defendant was not capable of premeditation due to the disorder.

The jury convicted the defendant of premeditated first degree murder, and he received a life sentence with the possibility of parole.


## I. SUFFICIENCY OF THE EVIDENCE

The defendant argues the proof submitted by the state was insufficient to legally support his conviction of premeditated first degree murder. The defendant does not contest that he shot and killed his wife. Instead, he argues that the evidence established he did not have the mental capacity to commit a premeditated murder.

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State

v. Abrams, 935 S.W.2d 399, 401 (Tenn. 1996). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996).

In this case, psychologist Dr. John McCoy testified the defendant was suffering from obsessive compulsive disorder at the time he killed his wife. Dr. McCoy stated that, due to this disorder, the defendant was not capable of premeditation. However, psychiatrist Dr. Nat Winston opined the defendant was capable of premeditation. The resolution of this conflicting testimony was for the jury to determine. Further, the proof established that the defendant purchased a rifle several weeks prior to the murder, and he had never before purchased a firearm. A few hours prior to the murder, he contacted his son-in-law to ask where he could obtain ammunition for the weapon. Approximately one hour before the killing, the defendant drove to his wife's home, parked his vehicle, got out his new rifle, walked a distance of 200 yards to a hiding spot in the bushes, and lay in wait for his wife to return. Upon her arrival, he shot her twice. The element of premeditation is a question of fact for the jury. State v. Gentry, 881 S.W.2d 1, 3 (Tenn. Crim. App. 1993). From the record before this court, a rational trier of fact could have found beyond a reasonable doubt that the defendant committed a premeditated murder. This issue is without merit.

## II. PROSECUTORIAL MISCONDUCT

The defendant also argues he should have been granted a mistrial due to statements made by the prosecutor during closing arguments. During his closing argument, the assistant district attorney stated the following regarding defendant's expert witness:

Ladies and gentlemen, aren't you tired of all this? Aren't you tired of opening your newspaper, hearing on the radio and seeing on tv where criminal defendants bring in expert witnesses to try and relieve them of the responsibility of their own actions?

Defense counsel then objected to the prosecutor's argument as being improper. The trial court admonished the prosecutor, outside the hearing of the jury, to exercise caution because he was "getting close to arguing that [the jury] should disregard the law." The defense did not request a mistrial, and no curative instructions were requested or given.

Initially, we would note the defendant has waived this issue by failing to request a mistrial contemporaneously with the objection to the prosecutor's argument. *See* State v. Hall, 976 S.W.2d 121, 157 (Tenn.1998) (Appendix). However, this court will address the merits of the issue.

Generally, the scope of closing argument is subject to the trial court's discretion. State v. Middlebrooks, 995 S.W.2d 550, 557 (Tenn. 1999). However, the parties should be granted wide latitude provided the argument is "temperate, predicated on evidence introduced during the trial, relevant to the issues being tried, and not otherwise improper under the facts or law." State v.

Thornton, 10 S.W.3d 229, 235 (Tenn. Crim. App. 1999). In this case, the statements of the prosecutor were not predicated on the evidence submitted at trial and were, therefore, improper.

In the case of an improper argument, this court must determine "whether the improper conduct 'affected the verdict to the prejudice of the defendant.'" Middlebrooks, 995 S.W.2d at 559 (quoting Harrington v. State, 215 Tenn. 338, 385 S.W.2d 758, 759 (1965)). To make this determination, we consider:

(1)     the challenged conduct in light of the facts and circumstances of the case;

(2)     the trial court and prosecution's curative measures;

(3)     the prosecutor's intent in making the argument;

(4)     the cumulative effect of the conduct in conjunction with any other errors in the record; and

(5)     the case's relative strength and weakness.

State v. Bigbee, 885 S.W.2d 797, 809 (Tenn. 1994). In the case *sub judice*, the prosecutor's improper statements were directed at the findings of the defense expert regarding the defendant's ability to premeditate the murder. The prosecutor's improper remarks were brief due to the prompt objection by defense counsel and the trial court's immediate instruction to the prosecutor. Following this direction, no further improper argument was made. Further, it is highly doubtful that the brief comments made by the prosecutor had any impact upon the jury where the proof established that the defendant hid in the bushes with a weapon for an hour waiting for his wife to return. For these reasons, we conclude the improper argument did not affect the jury's verdict to the prejudice of the defendant and, thus, did not constitute reversible error.

### III. DIMINISHED CAPACITY JURY CHARGE

The defendant moved the trial court to charge the jury as follows:

Evidence has been submitted in this case by the defense concerning the defendant's mental condition. This evidence should be considered by you, specifically in reference to whether or not the defendant possessed the necessary "premeditation," which is an element of murder in the first degree, or "knowledge" which is an element of murder in the second degree.

While this evidence may not establish a defense wherein the defendant would be found not guilty of any offense, it may be considered by you in deliberating upon

the necessary elements of murder in the first degree or murder in the second degree. As I instructed you earlier, should you find that the necessary elements of any of the grades of homicide are not present, the defendant must be acquitted as to that charge. You may consider evidence of the defendant's mental condition along with other relevant evidence in arriving at your verdict.

This request was denied by the trial court. The defendant argues this was reversible error.

While a criminal defendant's diminished capacity does not constitute a defense capable of excusing or defeating a criminal charge, evidence of the diminished capacity is relevant to determining the defendant's *mens rea*. State v. Grose, 982 S.W.2d 349, 353 (Tenn. Crim. App. 1997)(citing State v. Phipps, 883 S.W.2d 138,148 (Tenn. Crim. App. 1994)). Once the trial court has properly instructed the jury regarding the *mens rea* necessary to find the defendant guilty of the charged offense, no further instruction regarding diminished capacity or the effect of the evidence relating to diminished capacity is necessary. *See* Grose, 982 S.W.2d at 354.

In the instant case the trial court's jury charge regarding first degree murder and the definition of premeditation were taken verbatim from Tennessee Criminal Pattern Jury Instruction 7.01(b) (4th ed. 1995), as follows:

A premeditated act is one done after the exercise of reflection and judgment. Premeditation means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill preexist in the mind of the accused for any definite period of time. The mental state of the accused at the time he allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation. If the design to kill was formed with premeditation, it is immaterial that the accused may have been in a state of passion or excitement when the design was carried into effect. Furthermore, premeditation can be found if the decision to kill is first formed during the heat of passion, but the accused commits the act after the passion has subsided.

In addition, the trial court instructed the jury in accordance with Tennessee Criminal Pattern Jury Instruction 42.22, as follows:

The state must prove beyond a reasonable doubt the culpable mental state of the accused. Culpable mental state means the state of mind of the accused at the time of the offense. This means that you must consider all of the evidence to determine the state of mind of the accused at the time of the commission of the offense. The state of mind which the state must prove is contained in the elements of the offense as outlined in these instructions I've already given you.

In this case, you have heard evidence that the defendant might have suffered from a mental disease, defect or condition which could have affected his capacity to form the culpable mental state required to commit a particular offense.

If you find from the evidence that the defendant's capacity to form a culpable mental state may have been affected, then you must determine beyond a reasonable doubt what the mental state of the defendant was at the time of the commission of the offense to determine which, if any, offense he is guilty of.

These instructions were accurate and sufficiently covered the material provisions of the requested charge. No further instructions were necessary.

## CONCLUSION

Based upon our review of the record, the judgment of the trial court is affirmed.

_____
JOE G. RILEY, JUDGE