IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 25, 2001

## STATE OF TENNESSEE v. GARLAND GODSEY

**Appeal from the Criminal Court for Cumberland County**
**No. 4969     Leon C. Burns, Jr., Judge**

**No. E2000-01944-CCA-R3-CD**
**December 4, 2001**

The defendant was tried and convicted of second degree murder in the Cumberland County Criminal Court in connection with an aggravated assault of a bar patron who died approximately one month later. The trial court sentenced the defendant as a violent offender to 25 years incarceration in the Tennessee Department of Correction. On appeal, the defendant takes issue with the trial court's failure to instruct the jury on "diminished capacity" and with the length of the sentence he received. Based upon our review, we affirm the judgment below.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Robert L. Marlow, Shelbyville, Tennessee, for the Appellant, Garland Godsey.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; William E. Gibson, District Attorney General; Anthony J. Craighead, Assistant District Attorney General; and Ben Fann, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On August 5, 1997, the defendant, Garland Godsey, brutally and senselessly attacked Eddie Parsons in the Good Times Bar in Crossville. Parsons was hospitalized with severe head injuries that rendered him comatose and unable to breathe without a ventilator. Approximately 30 days after the assault, Parsons died in a nursing home without ever having regained consciousness. The defendant was indicted for premeditated, first degree murder, and following a jury trial he was convicted of the lesser-included offense of second degree murder. *See* Tenn. Code Ann. §§ 39-13-202 (Supp. 2000), 39-13-210 (1997). On February 11, 2000, the trial court sentenced the defendant as a violent offender to a term of 25 years incarceration. On June 26, 2000, the defendant filed an untimely motion for new trial. The trial court heard the motion the same day and entered an order

denying the new trial motion on July 18, 2000. An untimely notice of appeal followed on August 8, 2000. Before us, the defendant confesses the jurisdictional impasse but, nevertheless, asks us to review the sufficiency of the jury instructions and the sentence imposed. Finding no basis to reverse, we affirm the judgment of the trial court.

The facts of this case are essentially undisputed and do not require a lengthy exposition. Numerous patrons of the Good Times Bar witnessed the defendant attack Parsons. According to the testifying witnesses, Parsons had been at the bar drinking for some time, and by all accounts, he was very inebriated. The defendant was no stranger himself to alcohol, and by the time he arrived at the bar, he had consumed approximately one and one-half cases of beer. The defendant approached Parsons, and an argument ensued about a $40 debt that Parsons owed the defendant. When the confrontation threatened to become physical, a female patron interceded and separated the two men. The defendant and Parsons retreated to opposite ends of the bar.

The atmosphere in the bar seemingly calmed down, and the defendant told the bartender to prepare a round of drinks for everyone present. At some point, the defendant and Parsons resumed their argument by verbally exchanging obscenities and, as described by one witness, just "mouthing back and forth." The exchange continued in this fashion until Parsons called the defendant a "son of a bitch." The defendant stood and moved toward Parsons. Some witnesses testified that the defendant walked, and others said that he ran. Nonetheless, when he reached Parsons, the defendant punched Parsons with his fist with such force that Parsons was catapulted backwards off his bar stool. Parsons' head hit the concrete floor.

The witnesses' accounts diverge over whether the defendant continued with his fists to pound Parsons in the head, began kicking Parsons' lifeless body, or "jumped flat-footed in the air and stomped him in the face." There is agreement, however, that during the attack the defendant grabbed Parsons' hair and slammed his head repeatedly into the concrete floor. The female patron who had earlier interceded testified that she tried to pull the defendant off of Parsons. She testified that she hollered, "You're killing him." Eventually, the attack subsided, and the defendant left the bar.

The defendant was arrested two or three days later and charged with aggravated assault. A homicide charge of first degree murder was initiated following Parsons' death.

At trial, the defense did not dispute that the defendant attacked Parsons and caused Parsons' death; nor did the defense rely on self-defense or pursue an affirmative defense of insanity at the time of the commission of the offense. Rather, the defense sought to demonstrate through expert testimony that the defendant suffers from "intermittent explosive disorder" whereby his capacity to control aggressive impulses is extremely diminished. As a result, the defense argued that the defendant did not have the mental culpability required for first or second degree murder. The jury, nonetheless, found the defendant guilty of second degree murder.

In his first issue, the defendant claims that the evidence at trial raised the issue of his diminished capacity such that the trial court had an affirmative responsibility to give an instruction that a defendant's diminished mental capacity may negate a culpable mental state required for certain degrees of homicide. Before we can consider this complaint, the untimely notice of appeal must be addressed.

Our jurisdiction is activated by the timely filing of a notice of appeal. Such notice is required to be filed within 30 days after the entry of the judgment or order from which relief is sought. Tenn. R. App. P. 4(a). The only refuge that permits appellate review following an untimely notice of appeal is the authority conferred in criminal cases for this court to waive the timely filing of the notice of appeal "in the interest of justice." *Id.* Although the defendant has not made such a request, we deem the interests of justice to be better served by waiving the timely filing of the appeal notice.

The defendant did not request an instruction on "diminished capacity" at trial. His failure to do so constitutes waiver. *See State v. Lynn*, 924 S.W.2d 892, 898-99 (Tenn. 1996) (alleged omission in charge must be raised at trial or issue is waived); *State v. Cravens,* 764 S.W.2d 754 (Tenn. 1989).

Moreover, Appellate Rule 3(e) provides that

in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties, or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for new trial; otherwise, such issues will be treated as waived.

Tenn. R. App. P. 3(e). The untimely filed new trial motion in this case further defeats review of the "diminished capacity" instruction issue. *See State v. Dodson*, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989) (untimely new trial motion restricts review to those issues that would result in outright dismissal of prosecution, such as sufficiency of the evidence). It matters not that the trial court considered and ultimately ruled on the motion; it lacked jurisdiction over the untimely motion. *See State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997).

In very rare circumstances, plain errors may be reviewed when "necessary to do substantial justice." Tenn. R. Crim. App. 52(b). Pursuant to *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994), five factors should be considered to determine if an error rises to the level of plain error: (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is necessary to do substantial justice. All five factors must be

established by the record before the existence of plain error is recognized. *See State v. Smith*, 24 S.W.3d 274, 283 (adopting the *Adkisson* test for determining when plain error exists).

In this case, we are convinced that no plain error occurred. The concept of diminished capacity recognizes that a defendant may offer evidence relevant to show the existence of a mental condition that could negate the *mens rea* for the charged offense. Diminished capacity is not a defense to the commission of a crime. *State v. Hall*, 958 S.W.2d 679, 688-89 (Tenn. 1997). The defendant in this case was afforded the widest latitude in the introduction of expert and lay testimony in an effort to identify and explain how the combination of low serotonin, alcoholism, brain damage, mental retardation, and intermittent explosive disorder resulted in diminished capacity to form the culpable mental state of mind for first and second degree murder. In closing arguments, the defense then relied heavily on that testimony in promoting the position that the defendant did not "premeditate" the homicide and did not "knowingly" kill Parsons. We have, furthermore, reviewed the trial court's charge in this case, and the jury was correctly instructed on the proper *mens rea* required for first degree murder and the applicable lesser-included offenses. The trial court, in our opinion, was not required to separately charge "diminished capacity." *See State v. Grose*, 982 S.W.2d 349, 354 (Tenn. Crim. App. 1997) (no particular additional jury instruction on diminished capacity necessary where defendant introduced proof of his diminished mental abilities and jury was instructed on proper mens rea required for first degree murder). Because the failure to instruct does not breach a clear and unequivocal rule of law, plain error is not indicated.

The defendant's other complaint on appeal, regarding an excessive sentence, is that the evidence did not support application of enhancement factor (5) that the victim was treated with exceptional cruelty and that mitigating factors, such as his diminished capacity, were not considered. The defendant does not advocate what sentence he regards as appropriate.

Unlike jury instruction issues, sentencing issues are not required to be raised in a new trial motion to secure review at a later time on appeal. *See State v. Patterson*, 966 S.W.2d 435, 440 (Tenn. Crim. App. 1997). Therefore, review in this case hinges upon what effect is given to the untimely filed notice of appeal. Although the defendant has not requested that we waive the untimely filing, we elect to do so in the interest of justice to review the propriety of the defendant's 25-year sentence.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). "The burden of showing that the sentence is improper is upon the appellant." *Id*. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo*. *Id*. If appellate review reflects that the trial court properly considered all relevant factors and if its findings of fact are adequately supported by the

record, this court must affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

Our review of the sentencing hearing convinces us that the trial court followed the appropriate sentencing procedure, imposed a lawful sentence after considering and weighing the factors and principles of sentencing, and made findings of fact that are adequately supported by the record. The trial court's determinations are, therefore, entitled to a presumption of correctness.

At sentencing, the trial court found and applied three enhancement factors. The defendant does not challenge application of enhancement factor (1) that he has a previous history of criminal convictions, Tenn. Code Ann. § 40-35-114(1) (Supp. 2000), or enhancement factor (8) that he has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community, *id*. § 40-35-114(8). The defendant does dispute and deny that he treated Parsons with "exceptional cruelty" that would justify application of enhancement factor (5). *Id*. § 40-35-114(5).

The trial court's findings in regard to "exceptional cruelty" are thorough and fully support application of enhancement factor (5). The trial court emphasized that Parsons posed no threat after he was knocked to the ground, but the defendant continued his vicious attack. "[M]aybe one bashing of the head," the trial court observed, "would not be exceptional cruelty, but here, with three or more bashings into the concrete . . . I think that fits as exceptional cruelty in the commission of the offense." We agree with the trial court's assessment. *See State v. Alexander*, 957 S.W.2d 1, 6 (Tenn. Crim. App. 1997) (vicious attack justified finding of exceptional cruelty).

As for mitigating factors, we disagree with the defendant that the trial court failed to consider his "diminished capacity" and his potential for treatment. The trial court acknowledged that there was "strong evidence" about the defendant's various disorders, but it did not "believe that it is significant enough to reduce it from the weight of the enhancing factors." The trial court also believed that the jury had already taken the expert testimony into consideration in rejecting first degree murder. It is by now elementary that the weight to be assigned to enhancement and mitigating factors presented at sentencing is within the discretion of the trial court. *State v. Moss*, 727 S.W.2d 229, 238 (Tenn. 1986); *State v. Shropshire*, 874 S.W.2d 634, 642 (Tenn. Crim. App. 1993). The trial court in our opinion did not abuse its discretion. Similarly, there is no hard and fast rule as to affording "double credit" for a mitigating factor when a conviction of a lesser-included offense indicates that consideration was given by the jury to the same mitigating sentencing factor. *See State v. Manolito Jemison*, No. M1999-00752-CCA-R3-CD, slip op. at 9 (Tenn. Crim. App., Nashville, Nov. 22, 2000) (jury's verdict "may" render mitigating factor inappropriate for further consideration in sentencing, but no automatic prohibition against giving "double credit" applies). Again, it is a matter of discretion. We have previously observed that there is no *per se* prohibition against "double mitigation" of a sentence by applying a mitigating factor even though the jury has extended leniency to the defendant on the same basis; however, "double mitigation" is inappropriate if additional consideration of the relevant facts is not merited. *See State v. Samuel D. Braden*, No. 01C01-9610-CC-00457, slip op. at 12 (Tenn. Crim. App., Nashville, Feb. 18, 1998). The trial court

did not believe that additional consideration was merited, and we see no basis to disturb that conclusion or the imposition of a 25-year sentence

The defendant, we conclude, is not entitled to relief on either claim that he has raised in this appeal. The conviction and sentence are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE