IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 14, 2004

## DONALD BRANCH v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. P-26612     J. C. McLin, Judge**

---

**No. W2003-03042-CCA-R3-PC  - Filed December 21, 2004**

---

The petitioner, Donald Branch, appeals the denial of his petition for post-conviction relief from his aggravated vehicular homicide convictions, arguing that trial and appellate counsel were ineffective for failing to cite reported criminal law cases when arguing for a jury instruction on proximate causation and that appellate counsel was ineffective for failing to supplement his appellate brief with State v. Farner, 66 S.W.3d 188 (Tenn. 2001), and for failing to raise as an issue on direct appeal the trial judge's refusal to recuse himself. While the post-conviction appeal was pending, the petitioner sought and received permission to raise as an additional issue the impact of the United States Supreme Court's Blakely v. Washington opinion on the sentencing in his case. Having thoroughly reviewed the record, we conclude that the petitioner has not met his burden of demonstrating either a deficiency in counsel's representation or resulting prejudice to his case. We further conclude that Blakely does not apply retroactively to cases on collateral appeal. Accordingly, we affirm the post-conviction court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and NORMA MCGEE OGLE, J., joined.

Lance R. Chism, Memphis, Tennessee, for the appellant, Donald Branch.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Stephanie Johnson, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

The petitioner was convicted by a Shelby County Criminal Court jury of two counts of aggravated vehicular homicide, a Class A felony, and one count of driving while license revoked,

a Class B misdemeanor, and was sentenced, respectively, to consecutive terms of twenty-four years; twenty-four years, six months; and six months, for an effective sentence of forty-nine years in the Department of Correction. State v. Donald W. Branch, No. W1999-00506-CCA-R3-CD, 2002 WL 1558485, at *1 (Tenn. Crim. App. Jan. 4, 2002), perm. to appeal denied (Tenn. May 28, 2002). On direct appeal, this court affirmed the convictions but reduced one of the aggravated vehicular homicide sentences by six months, for a total effective sentence of forty-eight years, six months in confinement. Id.

The petitioner's convictions stemmed from his May 30, 1997, alcohol-related collision with a green Saturn at the intersection of Highway 64 and Houston Levy and Canada Roads in Shelby County, which resulted in the deaths of the occupants of the Saturn, Stephanie Kuehl and her six-month-old daughter, Zadie. Id. at *2. At approximately 5:30 p.m. that afternoon, the defendant was speeding westbound in his vehicle on four-lane Highway 64, hurrying to arrive on time for his weekend service at the penal farm for a prior DUI conviction, when he struck Kuehl's vehicle as she was crossing the highway from Houston Levy to Canada Road. Id. at **2-3, *9. Upon his arrival at the hospital, the petitioner's blood alcohol level was .22.[1] Id. at *6. In addition, the testimony of other motorists who saw the petitioner's vehicle just prior to the fatal wreck established that he was driving recklessly, weaving in and out of traffic, coming up close behind vehicles, passing in the left turn lane, and traveling well in excess of the posted 55-mile-per-hour speed limit, at estimated speeds ranging from 80 to 100 miles per hour. Id. at **2-4.

Further evidence in support of the convictions was provided by a University of Tennessee Professor of Civil Engineering, who testified the petitioner was driving approximately 80 miles per hour at the time of impact, and by an accident reconstructionist employed by the Michigan State Police, who offered the following findings and conclusions summarized in the direct appeal opinion:

> [The petitioner's] vehicle was traveling a minimum speed of 76 miles per hour (112 feet/second) upon impact with the victims' vehicle; the victims were traveling at approximately 17 miles per hour at impact; no pre-impact skid marks were created by [the petitioner's] vehicle; the intersection is visible from at least 760 feet when traveling westward; if [the petitioner's] vehicle had been traveling at 70 miles per hour, it would have missed impacting the victims' vehicle by 57 feet; if [the petitioner] had begun to apply his brakes at the point when the intersection was visible, it would have taken 4.67 seconds to stop; and the angle of impact with the victims' vehicle was 107 degrees (in other words, [the petitioner's] vehicle was turned slightly to the right on impact).

Id. at *7.

---

[1] Kuehl's blood, by contrast, tested negative for drugs and alcohol.

The petitioner's trial strategy included an attempt to show that the accident resulted not from his reckless or impaired driving, but instead from Kuehl's negligence in crossing the highway in front of his oncoming vehicle. In support, he relied on the testimony of two witnesses: a driver who was traveling in the right westbound lane of Highway 64 and preparing to turn right onto Canada Road at the time of the wreck, who testified that Kuehl came to a "rolling stop" at the stop sign on Houston Levy before starting across the highway, and a driver who was adjacent to Kuehl on Houston Levy waiting to turn left, who testified he saw the petitioner's vehicle approaching from the east "very fast" as Kuehl began to cross the highway and uttered the words, "Oh no, don't do that" when he saw her continue across. Id. at **3-4. In accordance with this strategy, trial counsel proposed that a special instruction be given in conjunction with the "proximate result" language of the aggravated vehicular homicide statute, in order that the jury might "consider whether [Kuehl's] behavior constituted a 'superceding intervening cause.'" Id. at *15. Specifically, counsel requested that the jury be instructed that it must find that the petitioner's actions were the "proximate cause of the result," or, in the alternative, that the petitioner's actions "constituted the proximate cause of the killing(s)."[2] The trial court denied the request, and the petitioner unsuccessfully raised, as an issue on direct appeal, the denial to give the requested instruction. Id. at **15-16. The trial court had instructed the jury on a motorist's duty to stop at a stop sign before proceeding with caution through an intersection, and to yield the right-of-way to a vehicle traveling on a through highway.

The petitioner filed a *pro se* petition for post-conviction relief on July 19, 2002, followed by several amended petitions after post-conviction counsel was appointed. In both his *pro se* and amended petitions, the petitioner alleged numerous instances of ineffective assistance of counsel. However, on appeal to this court he confines himself to arguing that trial and appellate counsel were ineffective for not citing reported criminal law cases when arguing for the instruction on proximate causation; appellate counsel was ineffective for not supplementing his appellate brief with State v. Farner, 66 S.W.3d 188 (Tenn. 2001), which was released during the pendency of the appeal; and appellate counsel was ineffective for not raising the issue of the trial judge's failure to recuse himself on direct appeal. Accordingly, we will limit our summary of the fairly lengthy evidentiary hearing to the testimony and arguments relating to those three allegations.

The petitioner was represented both at trial and on appeal by the Shelby County Public Defender's Office. Appellate counsel testified at the September 25, 2003, evidentiary hearing that he had been licensed to practice law since 1978 and had been practicing as an appellate attorney for over twenty years. He testified he read "every ounce" of the trial transcript, researched every issue raised in the motion for a new trial, and relied on his experience as an appellate attorney to determine

---

[2] Tennessee Code Annotated section 39-13-218 provides in pertinent part that "[a]ggravated vehicular homicide is vehicular homicide, as defined in § 39-13-213(a)(2), where . . . [t]here was at the time of the offense twenty-hundredths of one percent (.20%), or more, by weight of alcohol in the defendant's blood and the defendant has one (1) prior conviction for . . . [d]riving under the influence of an intoxicant." Tenn. Code Ann. § 39-13-218(a)(3) (1997 & 2003). Vehicular homicide is defined as "the reckless killing of another by the operation of an automobile . . . (1) [a]s the proximate result of conduct creating a substantial risk of death or serious bodily injury to a person; or (2) [a]s the proximate result of the driver's intoxication . . . ." Tenn. Code Ann. § 39-13-213(a) (1997 & 2003).

which issues to raise on appeal. His decision not to raise the recusal issue was one of strategy, based on his belief that it did not have any real merit.

Appellate counsel agreed that the jury instruction on proximate causation was one of the key issues at trial and on appeal. He acknowledged he cited civil cases in his appellate brief in support of his argument on that issue, and he did not cite the reported criminal cases of Letner v. State, 299 S.W. 1049 (Tenn. 1927); Copeland v. State, 285 S. W. 565 (Tenn. 1926); State v. Grose, 982 S.W.2d 349 (Tenn. Crim. App. 1997); or State v. Ruane, 912 S.W.2d 766 (Tenn. Crim. App. 1995). However, he did not think that those cases, all of which he had read "at one time or another," were on point, as they addressed the concept of superceding and intervening causes in general homicide cases and not the specific issue of whether proximate cause was the appropriate test to be applied in a vehicular homicide case. As for not supplementing his brief with a discussion of the Farner opinion, appellate counsel testified he assumed "the Court of Criminal Appeals actually read the Supreme Court opinions as they come out." Furthermore, although he found the case relevant in its definition of intervening and superceding causes, he did not think it was "on all fours with regard to whether Vehicular Homicide required proximate causation."

Junior trial counsel testified he had been licensed for seven years, had participated in over twenty criminal trials, and had handled "thousands" of criminal cases during his years with the public defender's office and in his current private practice, which consisted of approximately 95% criminal defense work. He said he and senior trial counsel did not believe the pattern jury instruction on proximate result adequately defined "proximate result versus proximate cause" and, for that reason, had argued at length for an instruction that "tend[ed] more towards the civil standard." Junior trial counsel testified he thoroughly researched the issue, but was simply unable to find much case law in support of their argument:

> What I can recall is that from the beginning on this case, I'm pretty sure there wasn't a lot of authority on Aggravated Vehicular Homicide and very little as to this issue on Vehicular Homicide, the more - - frankly more common crime in Tennessee. There was some speculation about whether this was the first Aggravated Vehicular Homicide case in Tennessee that went to trial after they passed that statute. We spoke with -- I know that we conferred with [appellate counsel] from the beginning about how the case law works on this, had done some research and didn't find anything that was clearly on point for this crime and that issue.
>
> And as to those cases, I don't believe those were all even Vehicular Homicide cases that you cited. But I'm not familiar with them word by word. I'm not going to pretend that I am. But I know that we looked at that issue extensively and tried to find something clearly on point and did not.

Although junior trial counsel was unsure how many hours he spent researching the specific issue of proximate cause, he testified that the total time he spent on the case, which he recorded on the file jacket, eventually covered six, full legal-sized pages. He said that both he and senior trial counsel met regularly with the petitioner and kept him fully informed on the case, including the charges he was facing, the elements of the offenses, and their defense strategy.

Senior trial counsel testified she was admitted to the bar in 1991 and had tried "probably at least 100" cases, with 20 to 25 before a jury, during the eight years she had worked in the Public Defender's Office. Junior trial counsel researched the proximate cause issue, and they discussed it with appellate counsel. They could not find any cases on point and, therefore, believed their case was one of first impression, presenting issues that had not been litigated before. Senior trial counsel testified she established a good rapport with the petitioner, whom she described as "very cooperative," and "one of the easiest clients that [she] ever worked with." She said she and junior trial counsel worked diligently on the case, met with the petitioner regularly, and explained, among other things, the charges, the elements of the offense, the proof against him, and the punishment he faced if convicted.

The petitioner testified junior trial counsel failed to keep him sufficiently informed about "[his] trial and about what [he] was facing in trial," claiming he had "[n]ot really" understood that he had been indicted for aggravated vehicular homicide or the elements of the offense. He further claimed that he was not informed of the potential penalty for the crime. However, he acknowledged he had read the indictment, and he and counsel talked about the elements of the offense before the start of the second trial.[3] In addition, he testified he had a sentencing chart and, therefore, knew what the range of punishment was for a Range I offender convicted of a Class A felony.

On December 19, 2003, the post-conviction court entered an order denying the petition, finding that the petitioner had not met his burden of proving his allegations by clear and convincing evidence. With respect to the specific allegations relevant to this appeal, the court found that they involved matters of trial tactics and trial strategy which were subject to counsel's professional judgment. The post-conviction court resolved all issues of credibility in favor of trial and appellate counsel.

## ANALYSIS

### I. Post-Conviction Standard of Review

The petitioner has the burden of proving his allegations of ineffective assistance of counsel by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2003). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497,

---

[3]The petitioner's first trial ended in a mistrial, apparently due to a comment made by one of the State's witnesses.

500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issues of deficient performance of counsel and possible prejudice to the defense are mixed questions of law and fact and, thus, subject to *de novo* review by the appellate court. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

## II. Ineffective Assistance of Counsel

To succeed on a claim of ineffective assistance of counsel, the petitioner bears the burden of showing both that his counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding, in that the result of his trial was unreliable or the proceedings fundamentally unfair. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see also State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee).

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065, and Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a "reasonable probability" that the outcome of the proceeding would have been different had it not been for counsel's deficiencies in performance. Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. When analyzing a petitioner's allegations of ineffective assistance of counsel, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

Because both prongs of the Strickland test must be satisfied before a petitioner can succeed on a claim of ineffective assistance of counsel, a failure to show either deficient performance or resulting prejudice results in a failure to establish the claim. See Henley, 960 S.W.2d at 580. Courts, therefore, need not approach the test in a specific order, or even "address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

## III. Petitioner's Specific Allegations of Ineffective Assistance

### A. Failure to Cite Reported Criminal Law Cases

The petitioner argues that both trial and appellate counsel were ineffective for failing to cite reported criminal law cases when arguing for a jury instruction on proximate cause. He contends that by focusing on the "proximate result" language of the vehicular homicide statute, counsel "missed the larger, more overriding issue of causation and its role in general homicide cases." According to the petitioner, had counsel cited to the "wealth of reported [criminal] cases" that discuss proximate and intervening cause in the context of a homicide case, the trial court "would have had tangible, controlling case-law to rely on in giving a more thorough proximate cause instruction." In support, he notes this court's observation in the direct appeal opinion that "the legal authority cited in Defendant's brief to support his argument fails to contain an opinion from this Court on this specific issue" and that "the majority of the opinions cited by Defendant concern civil matters," Donald W. Branch, 2002 WL 1558485, at *16, as well as the trial court's statement to defense counsel that it would issue the proposed instruction if counsel could find a case that said the instruction was the correct one and that it should be issued. The State argues, *inter alia*, that the post-conviction court properly found that counsel's choice of cases to cite was based on adequate and informed research and therefore entitled to deference by the reviewing court. We agree with the State.

The record establishes that the petitioner was represented both at trial and on appeal by experienced defense attorneys who engaged in extensive preparation for the case, which included thorough research on the proximate cause issue. Both junior and senior trial counsel testified that junior trial counsel thoroughly researched the issue, and that they both consulted extensively with appellate counsel on the topic. Despite their research, they were unable to find any reported criminal cases that were on point and, therefore, were forced to rely on civil cases for their argument. Appellate counsel was also unable to find any reported criminal law cases in support of his position, and believed that the four reported cases cited by post-conviction counsel that addressed intervening and superceding causes in homicide cases were too general to be helpful on the specific issue in their case. He explained his reasoning:

> So my task on appeal was to try to convince the Court that in fact proximate cause was the test and was the meaning behind the statute involved. And actually, there were no cases in Tennessee that addressed that specific issue in a Vehicular Homicide context, at least not since the enactment of the statute in the 1989 Criminal Code that addressed that particular concept.
>
> So . . . my number one battle was not whether intervening and superseding causes were a concept of the law applicable to proximate cause but whether or not proximate cause was applicable to Vehicular Homicide in the context of the Vehicular Homicide statute. So there was no case on that. Actually, the only case on that was against me, an unreported case of the Court of Criminal Appeals. So I found some descending [sic] opinions in some courts and some other arguments to make on behalf of the concept that proximate cause was

the true test. But as far as explaining what -- if proximate cause was the true test, if I had proven point A, point B the concept of superseding and intervening causes, I cited civil cases . . . for that concept.

In addition to failing to show any deficiency on counsel's part for failing to cite reported criminal law opinions in support of the proposed jury instruction, the petitioner has also failed to show that counsel's alleged deficiency in this respect prejudiced his case. None of the four cases cited by post-conviction counsel addresses the issue of proximate cause versus proximate result in an aggravated vehicular homicide case; thus, they would not have satisfied the trial court's request for an opinion that specifically supported counsel's proposed jury instruction in the context of their case. We further note this court's observation that the petitioner's brief failed to contain an opinion from this court "on this *specific* issue" was made only after we had applied the reasoning of State v. Bobby Weaver, No. 02C01-9307-CC-00143, 1995 WL 568420 (Tenn. Crim. App. Sept. 27, 1995), and concluded that the jury instruction issued by the trial court "sufficiently informed the jury of the definition of proximate result as it relates to vehicular homicide," including "the effect of the existence of an independent, intervening cause." Donald W. Branch, 2002 WL 1558485, at *16 (emphasis added).

## B. Failure to Supplement Appellate Brief with Farner Case

The petitioner next contends that appellate counsel was ineffective for failing to supplement his brief with State v. Farner, 66 S.W.3d 188 (Tenn. 2001), which was filed approximately three weeks before this court's direct appeal opinion in the instant case was released. Although he acknowledges that the Farner court approved the same instruction on causation that the trial court issued in the instant case, he asserts that the case was "vital" because of its "thorough discussion of proximate causation," and argues that counsel was ineffective for failing to cite it for the proposition that causation is an essential element to every homicide.

As with the previous allegation, the post-conviction court attributed appellate counsel's decision not to supplement his brief with the Farner case as one of strategy, subject to deference by the reviewing court. Again, the record supports the findings and conclusions of the post-conviction court. Appellate counsel's testimony at the evidentiary hearing established that he thoroughly researched and analyzed the proximate cause issue, read the Farner case when it was released, and determined from his experience that, although relevant in its definition of superceding and intervening causes, it was not "on all fours" with the issue in his case. Notwithstanding post-conviction counsel's assertion to the contrary, there is nothing in the record to indicate that appellate counsel incorrectly read the Farner case or misunderstood its holding.[4]

---

[4]The issue in Farner was "whether Tennessee law recognizes a co-perpetrator rule which bars the defendant's convictions for criminally negligent homicide on the basis that the victims were co-participants in the drag race." 66 S.W.3d at 191. The court concluded that there was no such co-perpetrator rule in Tennessee, but reversed the convictions and remanded for a new trial due to the trial court's failure to issue an instruction on proximate cause in

(continued...)

## C.  Failure to Raise Recusal Issue on Appeal

The petitioner also contends that appellate counsel was ineffective for failing to raise the trial judge's refusal to recuse himself as an issue on direct appeal.  Trial counsel originally filed a motion for recusal based on the trial judge's comments at the petitioner's bond hearing.  These comments occurred as defense counsel was arguing for a reduction in the petitioner's bond and reminded the trial judge that the petitioner was "presumed innocent" of the charges.  The trial judge responded by stating that the defendant was presumed innocent at trial, but he was under no obligation to presume the defendant innocent when considering his request for a reduction in bond.  At a later point in the hearing, the trial judge also stated that if it were his job to analyze the petitioner's character at that point, he would say that he was an "out-of-control drunk who cares nothing about the law or other people around him."

The petitioner argues that the trial judge's statements "would cause the trial court's impartiality to be questioned under an objective standard" and that appellate counsel should have pursued the issue on appeal.  However, "[t]he determination of which issues to present on appeal is a matter of counsel's discretion."  State v. Swanson, 680 S.W.2d 487, 491 (Tenn. Crim. App. 1984).  At the evidentiary hearing, appellate counsel fully and adequately explained his reasons for not raising the recusal issue:

> Well, at the time I looked at that issue and I researched it, looked at the odds of reversal and the law applicable thereto, and didn't really find it to have any merit.  I did not think I could succeed in the Appellate Court with claiming that the Judge should have recused himself.  So I didn't raise that on appeal.

Appellate counsel's decision not to raise the issue of recusal was obviously the result of extensive experience, preparation, and research.  In summary, we conclude that the petitioner has failed to meet his burden of demonstrating he was denied the effective assistance of counsel, either at trial or on appeal.

## IV.  Impact of Blakely on Petitioner's Sentence

The petitioner contends that Blakely v. Washington, 542 U.S. __,124 S. Ct. 2531 (2004), in which the United States Supreme Court, applying the rule in Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), held that the Sixth Amendment prohibits a defendant's sentence from being increased beyond the presumptive statutory maximum based on facts which have neither been found by a jury nor admitted by the defendant, applies retroactively to invalidate

---

[4](...continued)

connection with the instructions on criminally negligent homicide, noting that the trial court provided the jury with an instruction on proximate result in conjunction with the instructions on vehicular homicide, but that "no similar instructions were given as to criminally negligent homicide, nor was the jury referred to the instructions on proximate result previously given."  Id. at 204 n.14.

the enhanced and consecutive sentences imposed in his case. Noting that a panel of this court recently concluded that "Blakely . . . establishes a new rule in this state," State v. Chester Wayne Walters, No. M2003-03019-CCA-R3-CD, 2004 WL 2246196 (Tenn. Crim. App. Oct. 4, 2004),[5] the petitioner argues that, under the test announced in Teague v. Lane, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989), Blakely is a new "watershed rule of criminal procedure," requiring retroactive application. We respectfully disagree.

Under Teague, an exception to the general rule against the retroactivity of new procedural rules applies in cases which involve "watershed rules of criminal procedure," or "those new procedures without which the likelihood of an accurate conviction is seriously diminished." 489 U.S. at 311-13, 109 S. Ct. at 1076-77 (Brennan, J., dissenting) (citing Mackey v. United States, 401 U.S. 667, 692, 91 S. Ct. 1160, 1180, 28 L. Ed. 2d 404 (1971)). The Teague Court, recognizing that the exception was a narrow one, wrote:

> Because we operate from the premise that such procedures would be so central to an accurate determination of innocence or guilt, we believe it unlikely that many such components of basic due process have yet to emerge. We are also of the view that such rules are "best illustrated by recalling the classic grounds from the issuance of a writ of habeas corpus -- that the proceeding was dominated by mob violence; that the prosecutor knowingly made use of perjured testimony; or that the conviction was based on a confession extorted from the defendant by brutal methods."

Id., 489 U. S. at 313, 109 S. Ct. at 1077 (quoting Rose v. Lundy, 455 U.S. 509, 544, 102 S. Ct. 1198, 1216-1217, 71 L. Ed. 2d 379 (1982) (Stevens, J. , dissenting)).

The United States Supreme Court has not yet specifically addressed the retroactive application of Blakely. However, in Schriro v. Summerlin, __ U.S. __, 124 S. Ct. 2519, 2526, 159 L. Ed. 2d 442 (2004), the Court held that Ring v. Arizona, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), which applied the rule in Apprendi to require that a jury, rather than a trial judge, find the existence of aggravators necessary to impose the death penalty, was not a watershed rule of criminal procedure and therefore did not apply retroactively to cases already final on direct review. Noting that "for every argument why juries are more accurate factfinders [than judges], there is another why they are less accurate," the Court concluded that the evidence was simply "too equivocal" to support the conclusion that a trial judge's, rather than a jury's, finding of death penalty aggravators seriously diminished the accuracy of the proceeding. Schriro, __ U.S. at __, 124 S. Ct. at 2525.

---

[5]This opinion has been withdrawn and superseded by State v. Chester Wayne Walters, No. M2003-03019-CCA-R3-CD, 2004 WL 2726034 (Tenn. Crim. App. Nov. 30, 2004).

Other jurisdictions which have addressed the issue have declined to apply Blakely retroactively to cases that are final on direct appeal. See In re Dean, 375 F.3d 1287, 1290 (11th Cir. 2004) ("Because Blakely, like Ring, is based on an extension of Apprendi, Dean cannot show that the Supreme Court has made that decision retroactive to cases already final on direct review."); McBride v. State, 884 So. 2d 476, 478 (Fla. Dist. Ct. App. 2004) ("We further hold that Blakely does not apply retroactively to cases on collateral review."); State v. Petschl, __ N. W.2d __, 2004 WL 2663594, at *7 (Minn. Ct. App. 2004) ("Blakely has the same procedural effect as Apprendi, increasing the accuracy of the sentence but not the conviction. Because the Blakely rule does not improve the accuracy or fairness of a trial, we conclude that it is not a watershed rule subject to retroactive application on collateral review.").

The petitioner, while acknowledging the holding in Schriro, argues that Blakely should apply retroactively to his case because unlike in Schriro, where the Arizona trial judge was already required to find the existence of aggravating factors beyond a reasonable doubt, his trial judge was permitted to find the existence of the factors used to enhance his sentence by a preponderance of the evidence. However, even with the different standards applied, we are still unable to conclude that the judge's finding of enhancement factors "*seriously* diminishe[d] accuracy." Schriro, __ U.S. at __, 124 S. Ct. at 2525. Therefore, like other jurisdictions, we decline to find Blakely retroactively applicable to cases on collateral appeal.

## CONCLUSION

Following our review, we conclude that the petitioner has failed to demonstrate he was denied the effective assistance of trial or appellate counsel. We further conclude that Blakely should not be retroactively applied to cases which have already become final on direct appeal. Accordingly, we affirm the post-conviction court's denial of the petition.

_____
ALAN E. GLENN, JUDGE

-11-